UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Case No.:

JOHN DOE,

                                      Plaintiff,                             **COMPLAINT**

            -against-

                                                                  **PLAINTIFF DEMANDS**

BROWN HARRIS STEVENS RESIDENTIAL                **A TRIAL BY JURY**
MANAGEMENT, LLC, TERRA HOLDINGS, LLC,
PAUL HERMAN, *Individually*, and
RICHARD HOROVITZ, *Individually*,

                                      Defendants.
------------------------------------------------------------------------X

        Plaintiff, JOHN DOE, by and through his attorneys, SHEGERIAN & ASSOCIATES, INC., hereby brings this action against Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et. seq.* ("NYCHRL") and the New York Labor Law § 194 and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against/sexually harassed** by his employer solely due to his **gender/sexual orientation**, for unfair and **unequal compensation** solely due to his **sexual orientation** and in **Retaliation** for **rejecting unwanted sexual advances** and complaining of Defendants' **discriminatory pay practices** and opposing discrimination.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

-1-

3. Plaintiff DOE is a citizen of Florida and all Defendants are citizens of the State of New York. Therefore, complete diversity exists between the parties, and this Court has subject matter jurisdiction over this action.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as the Southern District of New York is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**PARTIES**

5. That at all times relevant hereto, Plaintiff JOHN DOE ("DOE") is a resident of the State of Florida and the County of Miami-Dade.

6. That at all times relevant hereto, Defendant BROWN HARRIS STEVENS RESIDENTIAL MANAGEMENT, LLC (Defendant "BHS") was a domestic limited liability company existing and authorized to operate by the State of New York and the United States government to do business in the State of New York. Defendant's principal place of business is located at 770 Lexington Avenue, New York, NY, 10021.

7. That all times relevant hereto, Defendants BHS employs more than four (4) employees.

8. That at all times relevant hereto, Plaintiff DOE was an employee of Defendant BHS.

9. That at all times relevant hereto, Defendant TERRA HOLDINGS, LLC., (Defendant "TERRA") was a domestic limited liability company existing and authorized to operate by the State of New York and the United States government to do business in the State of New York. Defendant's principal place of business is located at 770 Lexington Avenue, 4th Floor, New York, NY, 10021.

10. That all times relevant hereto, Defendants TERRA employs more than four (4) employees.

11. Upon information and belief, at all relevant times, Defendant BHS and Defendant TERRA operated as joint and/or integrated employers of Plaintiff. The two entities shared or co-determined matters governing the essential terms and conditions of Plaintiff's employment, including but not limited to hiring, supervision, scheduling, payroll, and disciplinary decisions. Defendants BHS and TERRA maintained interrelated operations, common management, centralized control of labor relations, and a degree of common ownership or financial control, such that they functioned as a single or joint enterprise with respect to the employment of Plaintiff and similarly situated employees.

12. That at all times relevant hereto, upon information and belief, Defendant PAUL HERMAN ("HERMAN") was an employee of Defendant BHS holding the position of "President" most recently, "Consultant," and a resident of the State of New York.

13. That at all times relevant hereto, Defendant HERMAN was Plaintiff DOE's supervisor and/or had supervisory authority over Plaintiff DOE.

14. That at all times relevant hereto, upon information and belief, Defendant RICHARD HOROVITZ ("HOROVITZ") was an employee of Defendant BHS holding the position of "President," and a resident of the State of New York.

15. That at all times relevant hereto, Defendant HOROVITZ was Plaintiff DOE's supervisor and/or had supervisory authority over Plaintiff DOE.

16. That at all times relevant hereto, Defendant BHS, Defendant TERRA, Defendant HORVITZ, and Defendant HERMAN are collectively referred to herein as "Defendants."

**FACTUAL BACKGROUND**

17. *Plaintiff's hiring*: Plaintiff was a dedicated employee of Defendants BHS and TERRA HOLDINGS (collectively hereinafter referred to as "Entity Defendants") beginning on or around April 15, 2022.

18. *Plaintiff's job performance*: Plaintiff was a diligent, hardworking employee at Entity Defendants, until he was constructively and actually discharged wrongfully on or around May 19, 2025. Throughout his employment, Plaintiff excelled in his position, successfully managing high-value capital projects, responding to building emergencies, maintaining positive relationships with residents, and stepping in to cover critical responsibilities neglected by underperforming staff.

19. *Plaintiff's protected status and activity*: Plaintiff was harassed and received unequal pay based on his actual or perceived sex/gender and/or sexual orientation. Further, after making protected complaints, Plaintiff was subjected to harassment, a hostile work environment, and retaliation by defendants.

20. *Plaintiff's Hiring*:

    a. Plaintiff was employed by Entity Defendants from April 15, 2022, through approximately May 19, 2025, holding the position of Vice President and Managing Director. During his employment he reported directly to the President, among others. Plaintiff's role was to manage and oversee one of Entity Defendants' prime properties on Central Park West. When he was hired, given his Director level position, Plaintiff was supposed to have significant decision-making authority over his subordinates, and overall. However, during his employment, it became apparent to Plaintiff that this was not something Entity Defendants intended for him to have.

21. *Defendants' adverse employment actions and behavior*:

a. Defendant HERMAN, the then President for Defendant BHS, was one of the only homosexual employees working for the Entity Defendants at the time. Entity Defendants otherwise consisted of largely straight males.

b. In or around April of 2022, a. Defendant HERMAN hired Plaintiff, an openly gale male, to serve in a senior leadership position within the company. However, shortly thereafter, in August of 2022, Defendant HERMAN's motivations for the hiring came out when he sexually harassed Plaintiff.

i. Several months after his hiring, in August 2022, then-President Defendant HERMAN invited Plaintiff to what he represented as a professional dinner. Defendant HERMAN arranged for the two to travel together by taxi to a steakhouse near his residence. During the ride, Defendant HERMAN spoke about the recent passing of his romantic partner.

c. During dinner, Defendant HERMAN consumed alcohol and began behaving inappropriately by placing his hand on Plaintiff's hand and leg. Despite the evident power imbalance, Plaintiff maintained a professional demeanor. After the meal, Defendant HERMAN requested Plaintiff assist him to his apartment due to an unrelated injury he had sustained and had at the time. Once inside, Defendant offered champagne and marijuana, which Plaintiff declined.

d. Suddenly, Defendant HERMAN sat on Plaintiff's lap and forcibly kissed him. Plaintiff immediately objected, stating that Defendant HERMAN was "not [his] type" and asked him to stop. In response, Defendant HERMAN stated, "I could have you if I wanted," and began describing prior sexual encounters, including a threesome with a restaurant manager that allegedly took place in the middle of his living room. He continued making inappropriate remarks, asserting that he could have "anyone [he] wants," and again forced a kiss by pushing his face against Plaintiff's, while Plaintiff refused and pushed away.

    e. After the incident, Defendant HERMAN directed Plaintiff to send an email confirming that he had a "nice dinner." Fearing retaliation, Plaintiff complied.

    f. Following the incident, Plaintiff took deliberate steps to avoid one-on-one interactions with Defendant HERMAN citing concerns over Defendant HERMAN's considerable influence within the company.

    g. Furthermore, not long after his hiring, Plaintiff also observed that the workplace was predominantly dominated by straight males, who were treated better, paid more, and worked less, often pawning off their responsibilities to Plaintiff, as well as females within the organization.

    h. Plaintiff also observed that unlike the prior individual who held the same position as him, a straight male, who was allowed to frequent the corporate office with the other executives, Plaintiff was confined to work within the property he oversaw, and was seldom allowed to work out of or frequent the corporate office. The few times that Plaintiff did go to the corporate office location, he observed that the culture was very exclusionary towards him (the only gay male there), and females.

    i. During his employment, Plaintiff also reported to Defendant HOROVITZ, a straight male. Defendant HOROVITZ took over as President in January of 2025. Throughout his employment, Plaintiff made complaints about the unfair treatment, disparate pay, and being singled out, but none of his complaints were ever investigated or addressed.

    j. From early on in his employment, Plaintiff observed that one of his subordinates, Resident Manager Greg Carlovich ("Carlovich"), a straight male, was failing to meet his obligations and performing poorly. Plaintiff brought this up repeatedly to Defendant HOROVITZ, who ignored him and showed favoritism towards Carlovich. Despite Plaintiff's repeated reports of serious misconduct—including Carlovich's failure to respond to a flood emergency that resulted

in substantial property damage and posed significant safety risks—he received no institutional support. Plainitff consistently raised concerns regarding building safety, staff accountability, and adherence to emergency response protocols, which he reasonably believed jeopardized the welfare of the residents.

    k. After repeatedly being brushed off by Defendant HOROVITZ about the issues with Carlovich, in or around November 2023, Plaintiff formally requested that Carlovich be placed on a Performance Improvement Plan ("PIP"). Finally, after multiple requests, Defendant HOROVITZ reluctantly agreed to proceed.

    l. But not only did Carlovich not take the PIP seriously, but one month later, made a retaliatory complaint against Plaintiff making false allegations of age discrimination against Plaintiff. Plaintiff was stunned and complained to human resources that this was a fraudulent complaint and was made in retaliation of a legitimate PIP. However, even though Carlovich's false discrimination claim was investigated and Plaintiff subjected to questioning on it, Plaintiff's retaliation complaint was never investigated or acknowledged. This again underscores the differential treatment whereby Carlovich, a straight male, was given deference and received favorable treatment and had his complaint investigated, while Plaintiff continued to be ignored.

    m. In or around 2023, Plaintiff discovered a pay disparity between him (a gay male), and Carlovich (a straight male with poor performance who was a subordinate of Plaintiff's), whereby Carlovich was being compensated much more than Plaintiff. Plaintiff complained to Defendant HOROVITZ regarding Defendants' discriminatory pay practices, and that although he was senior to Carlovich that Plaintiff was being paid significantly less than Carlovich, a straight male employee. Defendant HOROVITZ brushed off Plaintiff's complaint and stated instead that

Plaintiff "should just be grateful for having a job." Plaintiff was stunned at the response to his pay disparity complaint.

n. In or around 2024, Defendant HOROVITZ also went out of his way to send an email to all residents of the Central Park West property informing them not to tip Plaintiff. This came after Plaintiff had requested that he be put on holiday card that wished residents well and informing residents how they could provide tips to employees if they wished to do so. Plaintiff responded to Defendant HOROVITZ and told him that it was not right for him to single out Plaintiff and that his conduct violated New York tip laws and was unethical. Once again, this complaint was never addressed.

o. In April 2024, Plaintiff DOE observed similar patterns of misconduct by Fallon, a straight male, who succeeded Carlovich as Resident Manager. Prior to Fallon's hiring, Plaintiff was promised that Fallon was not going to make more than Plaintiff, and gave other assurances to Plaintiff to suggest that with Carlovich gone the tide would change and the disparity would stop, but it only became worse.

p. Fallon, similar to Carlovich, consistently failed to perform fundamental job responsibilities and routinely avoided after-hours duties. In fact, not long after his promotion into the role, Fallon began taking regular vacations, leaving his work for Plaintiff to do.

q. In 2025, Plaintiff DOE raised these concerns to another individual who he also reported to, Andrew Lasala, and while this individual acknowledged that Plaintiff was right to have these concerns and was being treated unfairly, did nothing to address Plaintiff's complaints. Plaintiff also complained to La Sala that he saw similar disparate treatment of women as well, and pointed to how straight males got away with not doing their jobs and taking time off whenever they wanted to, while Plaintiff, the only gay male employee, and women at the company, were

handed the responsibilities of the straight men and expected to do their work for them, while also being paid less than them.  Lasala never investigated or escalated these complaints either.

      r.  In May 2025, Plaintiff DOE learned that he had been lied to, and that Fallon *was* earning more than him, and also receiving significantly more favorable employment terms— including on-site housing, and access to the building's tip pool, even though he was a *subordinate* of Plaintiff, and Plaintiff expressly been told that Fallon would be paid less than Plaintiff.

      s.  Plaintiff was completely shocked and appalled at these knowingly false misrepresentation to him, and made a complaint to Defendant HOROVITZ shortly thereafter in May of 2025, telling him that *again* another straight male, who was his subordinate and performing poorly was being highly, unfairly compensated, and Plaintiff was being singled out and paid less than what he should be compared to the straight male subordinates he had.  Defendant HOROVITZ summarily dismissed the request and responded in a tone that was both demeaning and retaliatory, stating that he should "be grateful."  Plaintiff never observed this type of response or comment being made by Defendant HOROVITZ to any straight males, and was treating Plaintiff as less than other similarly situated straight male co-workers.

      t.  Unable to continue working in a hostile environment where his concerns were disregarded, misconduct was tolerated or rewarded, and retaliation had become routine, Plaintiff DOE submitted his resignation on May 19, 2025 with several weeks' notice to allow time for a transition, given the number of responsibilities Plaintiff was handling.  Defendants initially asked for Plaintiff to remain on longer, but Plaintiff was reluctant to do so given the hostile work environment.

      u.  Then, approximately a week thereafter, Plaintiff was called in to meet with a supervisor as well as Judy Caplan, who was employed by Defendant TERRA and served as Human

Resources for Entity Defendants.  During this meeting, his employment was terminated, and refused a reason for his termination, demonstrating Defendants' motivations to hide their illegal reason for terminating Plaintiff.

22. *Economic damages:*  As a consequence of defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

23. *Non-economic damages:*  As a consequence of defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

24. *Punitive damages:*  Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

25. *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

### FIRST CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
**For Sexual Harassment.**
**(Against All Defendants)**

26. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

27. The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status,

*sexual orientation* or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

28. Defendants' conduct, as alleged, violated the New York City Human Rights Law, including but not limited to, §8-107 of the New York City Administrative Code. Defendants committed unlawful employment practices, including by the following bases for liability.

29. Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting plaintiff to discrimination in his civil rights and/or to harassment.

30. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

31. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

32. As a proximate result of defendants' creation of a hostile work environment based on discrimination that harmed plaintiff, plaintiff is entitled to compensatory damages.

33. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

34. Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to plaintiff's protected rights, and this entitles plaintiff to punitive damages against defendants.

## SECOND CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### For Unequal Pay
### (Against All Defendants)

35. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

36. The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, *gender*, disability, marital status, *sexual orientation* or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in *compensation or in terms, conditions or privileges of employment*."

37. Defendants' conduct, as alleged, violated the New York City Human Rights Law, specifically §8-107 of the New York City Administrative Code, and defendants committed unlawful employment practices, including by the following, separate bases for liability: Plaintiff rejected Defendant HERMAN's sexual advances, after which he was denied workplace privileges and subjected to retaliatory investigations and exclusion.

38. Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting plaintiff to discrimination in his civil rights and/or to harassment.

39. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

40. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

41. As a proximate result of defendants' creation of a hostile work environment based on discrimination that harmed plaintiff, plaintiff is entitled to compensatory damages.

42. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

43. Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to plaintiff's protected rights, and this entitles plaintiff to punitive damages against defendants.

## THIRD CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### Retaliation for Refusing Sexual Advances
### and Complaining of Unequal Pay
### (Against All Defendants)

44. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

45. The New York City Administrative Code §8-107(7) provides that it is an unlawful discriminatory practice for an employer to retaliate or discriminate in any manner against an

individual because they opposed conduct prohibited by the NYCHRL, including sexual harassment and discriminatory treatment.

46. Defendants retaliated against Plaintiff for refusing sexual advances and complaining of unequal pay in violation of Admin. Code § 8-107(7). Retaliation included adverse employment actions such as unfounded investigations, exclusion from work-related communications, professional isolation, and constructive termination.

47. Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting plaintiff to discrimination in his civil rights and/or to harassment.

48. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

49. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

50. As a proximate result of defendants' creation of a hostile work environment based on discrimination that harmed plaintiff, plaintiff is entitled to compensatory damages.

51. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

52. Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to plaintiff's protected rights, and this entitles plaintiff to punitive damages against defendants.

### FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
**Aiding and Abetting**
**(Against All Defendants)**

53. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

55. Defendants violated the section cited herein as set forth.

### FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE –
**Employer liability**
**(Against All Defendants)**

56. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

57. The New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1.   the employee or agent exercised managerial or supervisory responsibility; or

        2.   the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c.   An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

58.   Defendants violated the section cited herein as set forth.

## FIFTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW § 194
### Unequal Pay and Differential in Rate of Pay
### Because of Protected Class Status Prohibited

59. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60. New York Labor Law ("NYLL") § 194 prohibits employers from paying employees at a rate less than the rate paid to employees of the opposite sex (or other protected categories, as amended), for equal work on a job the performance of which requires equal skill, effort, and responsibility, and which is performed under similar working conditions.

61. Plaintiff, a gay man, performed equal work on jobs that required equal skill, effort, and responsibility, and were performed under similar working conditions.

62. Despite performing equal work, Defendants paid Plaintiff less than straight male employees who were performing comparable duties.

63. Any pay differential was not based on a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a bona fide factor other than Plaintiff's protected category, sexual orientation, such as education, training, or experience, that is job-related and consistent with business necessity, as defined by law.

64. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages, emotional distress, humiliation, loss of professional reputation, and other damages.

65. Pursuant to NYLL § 198 and § 194, Plaintiff is entitled to recover the wage differential, liquidated damages, reasonable attorneys' fees, and costs of this action.

### SIXTH CAUSE OF ACTION
### VIOLATION OF NEW YORK LABOR LAW § 215
#### Retaliation Prohibited for Exercising
#### Rights Under the Labor Law

66. NYLL § 215 prohibits an employer from discharging, threatening, penalizing, or in any other manner to discriminate or retaliate against any employee because such employee has made a complaint to his or her employer that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

67. Plaintiff engaged in protected activity under NYLL § 194 when Plaintiff complained about unequal pay, pay disparities based on sexual orientation, and other compensation-related injustices occurring within Defendant's organization.

68. In response to Plaintiff's complaints, Defendants took adverse employment actions against Plaintiff, including but not limited to subjecting Plaintiff to increased scrutiny, marginalization, unjustified disciplinary measures, and ultimately constructive termination of his employment.

69. Defendants' actions were willful and taken in retaliation for Plaintiff's protected activity, in violation of NYLL § 194.

70. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, reputational harm, and attorneys' fees and costs.

71. Pursuant to NYLL § 198 and § 194, Plaintiff is entitled to recover the wage differential, liquidated damages, reasonable attorneys' fees, and costs of this action.

### JURY DEMAND

72. Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JOHN DOE, respectfully requests that this Court grant judgment, in an amount exceeding the jurisdictional limits of all lower courts of the State of New York, as follows:

A. For an award of damages against defendants, in an amount to be determined at trial, plus interest, to compensate plaintiff for all monetary and economic damages;

B. For an award of damages against defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and compensatory damages, including compensation for plaintiff's emotional distress;

C. For compensatory damages according to proof;

D. For general and special damages according to proof;

E. For exemplary damages according to proof;

F. For liquidated damages according to proof;

G. For pre-judgment and post-judgment interest on all damages awarded;

H. For reasonable attorneys' fees;

I. For costs of suit incurred;

J. For an award of lost wages in an amount to be determined at trial;

K. For an award of liquidated damages;

L. For an award of punitive damages in an amount to be determined at trial;

M. For an award of pre-judgment interest on all amounts due;

N. For such other and further relief as the Court may deem just and proper.

Dated: July 28, 2025                    SHEGERIAN & ASSOCIATES

                                        By: _____
                                        Jessenia Maldonado, Esq.
                                        *Attorneys for Plaintiff*
                                        90 Broad Street, Suite 804
                                        New York, NY 10004
                                        Tel.: (212) 257-8883
                                        Fax: (212) 804-7299